BESHADA FARNESE LLP
Peter J. Farnese (SBN 251204)
pjf@beshadafarneselaw.com
10250 Constellation Blvd., Suite 2300
Los Angeles, California 90067
Telephone: 310-356-4668
Facsimile: 310-388-1232

*Attorneys for Plaintiff*
*HDMI Licensing, LLC*

EPSTEIN DRANGEL LLP
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone: 212-292-5390
Facsimile: 212-292-5391

*Attorneys for Plaintiff*
*HDMI Licensing, LLC*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| HDMI LICENSING, LLC<br>*Plaintiff*<br><br>v.<br><br>TOMTOP GROUP, LTD.; SHENZHEN TOMTOP TECHNOLOGY CO., LTD.; and XINHUI LIAO a/k/a MIKE LIAO<br>*Defendants* | Case No. 2:16-cv-06923-JFW-AGR<br><br>PLAINTIFF HDMI LICENSING, LLC's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS TOMTOP GROUP, LTD.; SHENZHEN TOMTOP TECHNOLOGY CO., LTD.; and XINHUI LIAO a/k/a MIKE LIAO'S MOTION TO DISMISS<br><br>Original<br>Complaint Filed:  September 14, 2016<br>Hearing Date:   (None Set)<br>Trial Date:    October 24, 2017 |

1

## **TABLE OF CONTENTS**

I.   INTRODUCTION & RELEVANT FACTS ...................................................... 1

II.  ARGUMENT ........................................................................................ 4

    A.  Rule 12(b)(6) Standard of Review ............................................... 4

    B.  Nominative Fair Use Standard .................................................... 5

        1.  The Nominative Fair Use Defense is Generally Inappropriate for Determination on a 12(b)(6) Motion to Dismiss Because the Well-Pleaded Allegations of the Complaint Preclude the Application of the Defense ...................... 6

        2.  Defendants' Use of HDMI Trademarks is not for the Purpose of Readily Identifying Plaintiff's Licensed Products ........ 8

        3.  Defendants Use More of the HDMI Trademarks Than Necessary to Identify their Products ............................................ 11

        4.  Defendants' Use of the HDMI Trademarks Suggests Sponsorship and/or Endorsement by HDMI Licensing and the HDMI Specification ................................................................ 15

III. CONCLUSION ................................................................................... 20

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Adobe Sys. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136 (N.D. Cal. 2015) ............ 11, 17

4

*Asarco, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999 (9th Cir. 2014) ............................5

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................4

6

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 2008 U.S. Dist. LEXIS
    109800 (N.D. Cal. Dec. 18, 2008) .....................................................................7

7

8

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ...............................4

9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, (2007) ............................................4, 5

10

*Brother Records, Inc. v. Jardine*, 318 F.3d 900 (9th Cir. 2003) .....................3, 14, 18

11

*Dig. Theater Sys. v. Mintek Dig., Inc.,* 2004 U.S. Dist. LEXIS 16832 (C.D. Cal.
    May 25, 2004) ............................................................................................11, 19

12

*Elec. Arts, Inc. v. Textron Inc.*, 2012 U.S. Dist. LEXIS 103914 (N.D. Cal. 2012) ........7

13

*Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997
    (N.D. Cal. 2012) ...............................................................................................15

14

15

*Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp. 2d 1068
    (C.D. Cal. 1998) ...............................................................................................16

16

*Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609 DDP
    (SS), 2015 U.S. Dist. LEXIS 102724 (C.D. Cal. Aug. 4, 2015) ...................6, 7

17

18

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) .......................................5

19

*Gorski v. Gymboree Corp.*, 2014 U.S. Dist. LEXIS 97816 (N.D. Cal. July 16,
    2014) ................................................................................................................15

20

*In Cairns v. Franklin Mint Co.*, 292 F.3d 1139 (9th Cir. 2002) ...................................3

21

*In re Dual-Deck Video Cassette Recorder Lit.*, 11 F.3d 1460 (9th Cir. 1993) ...........10

22

*KEMA, Inc. v. Koperwhats,* 2010 U.S. Dist. LEXIS 90803 (N.D. Cal. Sep. 1,
    2010) ...........................................................................................................7, 17

23

24

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ...........................................................5

25

*Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792 (9th Cir. 2003) ...............................6

26

*New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) . 5, 6, 13

27

*NL Industries, Inc. v. Kaplan*, 792 F.2d 896 (9th Cir. 1986) ......................................4

*Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002) ...........................14

28

*Sams v. Yahoo! Inc.*, 713 F.3d 1175 (9th Cir. 2013) ...................................................5

*Summit Entm't, LLC v. B.B. Dakota, Inc.*, 2011 U.S. Dist. LEXIS 151582 (C.D. Cal. Nov. 21, 2011) ........................................................................15, 19

*Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206 (C.D. Cal. 1998).........13, 14

*Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171 (9th Cir. 2010) ...........6, 13

*Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170 (E.D. Cal. 2008).............6, 15

**Rules**

Fed. R. Civ. P. 15(a) ...................................................................................................5

**Treatises**

2 J. Thomas McCarthy, Trademarks and Unfair Competition § 11:47 (4th ed. 2001)........................................................................................................18

4 McCarthy on Trademarks and Unfair Competition § 23:11 (4th ed.).......................14

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiff, HDMI Licensing, LLC ("HDMI Licensing" or "Plaintiff"), a Delaware limited liability company, by and through its undersigned counsel, hereby respectfully submits this Memorandum of Points and Authorities in Support of its Opposition to Defendant TomTop Group, Ltd.; Shenzhen TomTop Technology Co., Ltd.; and Xinhui Liao a/k/a Mike Liao's (hereinafter, "TomTop" or "Defendants")[1] Motion to Dismiss Plaintiff's Complaint ("Opposition").

## I.   INTRODUCTION & RELEVANT FACTS

Over a decade ago, leading consumer electronics manufacturers, including Hitachi Maxell, Ltd., Panasonic Corporation, Koninklijke Philips Electronics N.V., Silicon Image, Inc., Sony Corporation, Technicolor S.A. and Toshiba Corporation (the "HDMI Founders"), banded together to create the High-Definition Multimedia Interface specification (the "HDMI Specification"), a next-generation, industry-leading and de-facto digital interface specification for connecting consumer electronics products capable of sending or receiving an HD signal. *Complaint*, ¶ 13. Specifically, the HDMI Specification enables a consumer to use a single cable (an "HDMI Cable") to connect a high-definition source device—such as a cable TV set-top box, a Blu-ray player, an HD-DVR, or an Xbox—to a high-definition display such as a digital television, monitor, video projector, or digital audio device. *Complaint*, ¶ 14.   The HDMI Specification is licensed to electronics and PC manufacturers

---

[1] As of the filing of the instant Opposition, Defendant Xinhui Liao a/k/a Mike Liao has been dismissed from this case (*Docket Entry No. 47*).

worldwide to manufacture products using the HDMI Specification ("HDMI Adopter(s)" and "Licensed Product(s)", respectively). *Complaint*, ¶ 19. Licensed Products bearing the HDMI Trademarks (as defined in the Complaint, ¶ 21) convey to consumers that products marked with the HDMI Trademarks comply with the technical elements of the HDMI Specification, and have been tested and certified to work seamlessly with other Licensed Products bearing the HDMI Trademarks. *Complaint*, ¶¶ 20, 26-27.

This is a straightforward case of trademark counterfeiting and infringement arising from Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying offering for sale and/or selling unlicensed, noncompliant, infringing and/or counterfeit HDMI components and/or products using Plaintiff's HDMI Trademarks (collectively, "Infringing Products"). *See Complaint*, ¶ 1. Rather than joining over 1,700 of the largest and most innovative electronics and PC manufacturers worldwide, such as Apple, Inc., Samsung Electronics, Inc. and Sharp Corporation, etc., who have manufactured over 3 billion Licensed Products using the HDMI Specification, all of which have passed HDMI Licensing's required certification testing process, in obtaining a license to use the HDMI Trademarks (*see Complaint*, ¶¶ 19, 26), Defendants, with actual knowledge of HDMI Licensing's rights in and to the HDMI Trademarks, dating back to at least 2012, when they received the first of five (5) notices regarding seizures of Infringing Products from U.S. Customs and Border Protection ("CBP") (*see Complaint*, ¶¶ 37-38, 43-44, Ex.

B), have continued to engage in their counterfeiting and infringing conduct, as alleged in the Complaint (*see* Complaint, ¶¶ 29-47, Exs. B-E).  Despite this, Defendants now attempt to argue that "because there is no other way to refer to [the] connector with that particular configuration other than as an HDMI connector, any use Defendant[s] ha[ve] made of the term HDMI is a nominative fair use."  Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss Plaintiff's Complaint, *Docket Entry No. 38* (hereinafter, "Motion to Dismiss"), pg. 2: 15-16.

It is the well-settled law of this Circuit that, "[t]he nominative fair use analysis is appropriate where a defendant has used the ***plaintiff's mark*** to describe the ***plaintiff's product***, even if the defendant's ultimate goal is to describe his own product."  *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 904 (9th Cir. 2003), quoting *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1152 (9th Cir. 2002) (collecting cases where the defendant used the plaintiff's trademark to refer to the plaintiff's product, and therefore,  the nominative fair use analysis applied) (emphasis added).  Plaintiff has sufficiently alleged, and the evidence of record unequivocally shows, that Defendants have used the HDMI Trademarks prominently on and in connection with the   manufacturing,   importing,   exporting,   advertising,   marketing,   promoting, distributing, displaying offering for sale and/or selling of a variety of Infringing Products,  including  on  the  packaging,  which  Defendants  readily  admit  are  not manufactured  by  HDMI  Adopters,  have  not  been  tested  and  certified  to  work seamlessly with other Licensed Products bearing the HDMI Trademarks (Motion to

Dismiss, pg. 10: 10-18) and therefore, are not Licensed Products certified to bear the HDMI Trademarks. *See, e.g., Complaint*, ¶¶ 29, 36-42, *Exs. D-E*.

Since Defendants are not using Plaintiff's HDMI Trademarks to describe Plaintiff's products, but are instead using **Plaintiff's HDMI Trademarks** to describe their own **Infringing Products**, Defendants' nominative fair use defense must fail, and even if the defense was properly raised, Defendants are unable to satisfy all three (3) factors of the test for nominative fair use in light of Plaintiff's well-pleaded claims of counterfeiting, trademark infringement and unfair competition relating to the unauthorized use of Plaintiff's HDMI Trademarks, particularly on a motion to dismiss.

## II.   ARGUMENT

### A. Rule 12(b)(6) Standard of Review

Dismissal of a claim pursuant to Rule 12(b)(6) is proper only if there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and construe them in a light most favorable to the nonmoving party. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). "[D]etailed factual allegations" are not required, but a complaint must include sufficient facts to "state a

claim to relief that is plausible on its face." *Bell Atlantic Corp., 550 U.S. at 555, 570.*

"Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint." *Asarco, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014),* citing *Sams v. Yahoo! Inc., 713 F.3d 1175, 1179 (9th Cir. 2013)* ("[T]he assertion of an affirmative defense may be considered properly on a motion to dismiss where the 'allegations in the complaint suffice to establish' the defense.").

Thus, motions to dismiss are generally disfavored and are only granted in extraordinary circumstances. *See Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997).* Leave to amend should be freely granted, even if no request was made, unless it is impossible to cure the complaint's deficiencies by amendment. Fed. R. Civ. P. 15(a); *see also Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).*

**B. Nominative Fair Use Standard**

Nominative fair use of a trademark is when the alleged infringer uses plaintiff's trademark "to describe the plaintiff's product, rather than its own…," "…for purposes of comparison, criticism, point of reference or any other such purpose." *New Kids on the Block v. News Am. Publ'g, Inc., 971 F.2d 302, 307-308 (9th Cir. 1992).* To establish that the use of a trademark constitutes nominative fair use, a defendant must prove the following three elements: "[f]irst, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or

service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.* at 308 (footnote omitted).  Further, if a defendant cannot establish that its use of the plaintiff's mark satisfies **all three** of the *New Kids* factors, the defense does not apply.  *Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1178 n.9 (E.D. Cal. 2008), citing *New Kids* at 308; *see also Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 810 (9th Cir. 2003) (stating a defendant must prove three elements to show nominative fair use).

The *New Kids* test replaces the *Sleekcraft* likelihood of confusion analysis in cases where a nominative fair use defense is raised, and is, "designed to address the risk that nominative use of the mark will inspire a mistaken belief on the part of consumers that the speaker is sponsored or endorsed by the trademark holder.  The third factor speaks directly to the risk of such confusion, and the others do so indirectly: Consumers may reasonably infer sponsorship or endorsement if a company uses an unnecessary trademark or 'more' of a mark than necessary." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-76, 1182 (9th Cir. 2010).

> **1.** ***The Nominative Fair Use Defense is Generally Inappropriate for Determination on a 12(b)(6) Motion to Dismiss Because the Well-Pleaded Allegations of the Complaint Preclude the Application of the Defense***

Despite Defendants' assertion that it may be appropriate in certain circumstances[2], it is far from the norm to dismiss a trademark infringement claim

---

[2] Defendants rely exclusively on *Gibson Brands, Inc. v. John Hornby Skewes & Co.*, No. CV 14-00609 DDP (SS), 2015 U.S. Dist. LEXIS 102724 (C.D. Cal. Aug. 4, 2015), to support their proposition that a motion to dismiss based on a nominative fair use defense may be appropriate.  In *Gibson*, Judge Pregerson opined that to prevail on a nominative fair use defense claim at the motion to dismiss stage requires a finding that, "'the pleadings fail[ed] to allege a mark use beyond nominative fair use.'" *Id.* at

pursuant to Rule 12(b)(6) based on a nominative fair use defense[3]. *See KEMA, Inc. v. Koperwhats*, 2010 U.S. Dist. LEXIS 90803, at *10 n.5 (N.D. Cal. Sep. 1, 2010) (collecting cases); *see also Elec. Arts, Inc. v. Textron Inc.*, 2012 U.S. Dist. LEXIS 103914 (N.D. Cal. 2012).  Since, a "[n]ominative fair use analysis typically involves questions of law and fact, [] determination on a motion to dismiss is premature." *Elec. Arts*, 2012 U.S. Dist. LEXIS 103914, at *14; *see also Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 2008 U.S. Dist. LEXIS 109800 (N.D. Cal. Dec. 18, 2008).  Here, since Plaintiff's well-pleaded allegations show: (1) Plaintiff's ownership of valid trademarks (i.e., the HDMI Trademarks) (Complaint, ¶¶ 21-23), which Defendants acknowledge for the purposes of the Motion to Dismiss (Motion to Dismiss, pg. 5: 7-8); (2) that Defendants are ***not*** in fact using the HDMI Trademarks to describe Licensed Products, but rather to describe their own Infringing Products which are nonconforming and counterfeit (Complaint, ¶¶ 29, 36-38, 40-42, Exs. D-E); and (3) that Defendants' consumers are likely to believe that Defendants' use of the HDMI Trademarks suggests to consumers that such Infringing Products "implement all portions of the HDMI Specification required for the specific type of Licensed

---

*12 (internal citation omitted).  Judge Pregerson ultimately denied plaintiff's motion for leave to amend, finding the case similar to *New Kids*.  Yet importantly, the fact-patterns of both *New Kids* and *Gibson* are readily distinguishable from the facts at hand.  More specifically, *Gibson* involved a suit against a company that had re-published third-party reviews on its own website, and it was apparent that, when taken in context, references to the plaintiff's trademarks set forth in such reviews could not reasonably imply endorsement.  In fact, the Court found that "the references to Gibson [plaintiff] actually reinforce the idea that Gibson [plaintiff] does not endorse the JHS's [defendant's] guitars". *Id. at *14*.  Distinguishably, here, Defendants have used the HDMI Trademarks in a manner that unquestionably implies sponsorship and/or endorsement, as further discussed in Section B (4) *infra*.
[3] Notably, Judge Pregerson also acknowledged "…courts have declined to dismiss a trademark claim on a motion to dismiss based on nominative fair use doctrine . . ." *Gibson Brands, Inc.*, 2015 U.S. Dist. LEXIS 102724, at FN 5 (collecting cases).

Product and pass all applicable testing procedures", and are therefore authorized, sponsored, approved or otherwise related to Plaintiff and/or its licensees (i.e., the HDMI Adopters) (*see* Complaint, ¶¶ 26, 46-47, 49, 59, 69, 77, 85), Plaintiff has therefore pleaded sufficient facts to support its claims for trademark infringement, counterfeiting and unfair competition and such allegations preclude the application of the nominative fair use defense at this stage.   Further, because Defendants cannot, under any circumstances, satisfy all three *New Kids* factors, their nominative fair use defense is entirely inapplicable in this case.

### 2. *Defendants' Use of HDMI Trademarks is not for the Purpose of Readily Identifying Plaintiff's Licensed Products*

Contrary to Defendants' assertion that the HDMI Trademarks are used to "refer to audio connectors of this particular physical configuration" (Motion to Dismiss, pg. 8: 19-20), as alleged in the Complaint, proper use of the HDMI Trademarks anywhere on or in connection with a Licensed Product, including near an input port or output port, signifies to consumers that the product in question is, in fact, a Licensed Product, manufactured by an HDMI Adopter, that complies with the technical elements of the HDMI Specification, and that has been tested and certified to work seamlessly with other Licensed Products bearing the HDMI Trademarks.  *Complaint*, ¶¶ 19-20, 25-27.

The HDMI Trademarks can only be used on or in connection with a Licensed Product that has met certain requirements, namely: (1) the finished product, to be sold to a consumer, must be manufactured by an HDMI Adopter (i.e., even if the product's internal components were made by an HDMI Adopter, in order to qualify as a

Licensed Product, the end product must also be manufactured by an HDMI Adopter); and (2) each product, from component to end product, must pass independent testing for compliance with the HDMI Specification. *Complaint*, ¶ 26. The essential value of the HDMI Specification inheres in its interoperability: the confidence that different types of Licensed Products from thousands of different HDMI Adopters will work together accurately to transmit, receive, and display audiovisual signals in precisely the same way, by strictly following the HDMI Specification. *Complaint*, ¶¶ 13-17, 20, 27. Without strict licensing and compliance testing, Plaintiff (and manufacturers and consumers) cannot rely on the HDMI Trademarks to signify only fully and reliably interoperable devices. Only if both of the foregoing requirements are met can such a product use the HDMI Trademarks and qualify as a Licensed Product. *See Complaint*, ¶¶ 19, 20, 26-27.

Unlicensed uses of the HDMI Trademarks jeopardize the economic interests, goodwill, and reputation of HDMI Adopters and their Licensed Products. *See Complaint*, ¶¶ 46-49. A consumer will not know whose products have caused an incompatibility and will understandably, but incorrectly, attribute blame on the Licensed Product. *See Id.* Thus, it is crucial for Plaintiff to preserve the hard-earned goodwill that Plaintiff has amassed in its HDMI Trademarks, for the benefit of consumers who use Licensed Products, the HDMI Adopters, and the industries that have invested billions of dollars based on the reputation and integrity of Licensed Products bearing the HDMI Trademarks. *See Complaint*, ¶¶ 17-20, 27, 45-49.

In reliance, almost exclusively, on *In re Dual-Deck Video Cassette Recorder Lit.*, 11 F.3d 1460 (9th Cir. 1993), where the court held that marking a connection on defendant's *receiver* "VCR 2" was fair use and not an infringement of the mark "VCR-2" (for a particular brand of *duel-bay video cassette recorders*), because the mark merely described the place to connect a second VCR product and was not a reference to the plaintiff's VCR-2 product, Defendants argue:

> It is simply not possible to have an input/output connector jack that is compatible with the physical configuration of an HDMI connector and to inform the consumers of that fact without calling it an HDMI connector.

Motion to Dismiss, pg. 9: 7-10.

However, Defendants' reliance on *In re Dual-Deck* is entirely improper since here, as discussed above, the HDMI Trademarks can ***never*** be used at all on or connection with a product that is made by an unlicensed manufacturer, or on a product intended for end users that has not been compliance tested, nor do the HDMI Trademarks signify merely an "input" or "connection", and further, Defendants' use of the HDMI Trademarks is on or in connection with their sale or offering for sale of non-conforming or counterfeit goods (i.e., Infringing Products), as Defendants readily admit. Motion to Dismiss, pg. 10: 10-15.

By virtue of the fact that Defendants' Infringing Products (two of which were identified in the Complaint)[4], are unlicensed and have not been submitted to, or

---

[4] Notably, while Defendants' Motion to Dismiss discusses only the two (2) specific *examples* of Infringing Products specifically identified in the Complaint, the Complaint sufficiently alleges extensive counterfeiting and infringement of the HDMI Trademarks by Defendants. *Complaint*, ¶¶ 29, 37-42, 45-47.

passed, the applicable testing procedures, and are therefore **counterfeit products** (*see* Complaint, ¶¶ 1, 36), Defendants' nominative fair use defense must fail, since Defendants cannot, in good faith, complain that they have no alternative terms to use in connection with their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of non-conforming or counterfeit goods (i.e., Infringing Products) other than Plaintiff's HDMI Trademarks. *See Adobe Sys. v. A & S Elecs., Inc.*, 153 F. Supp. 3d 1136, 1143 (N.D. Cal. 2015) (finding that where Adobe alleged that defendants distributed non-conforming counterfeit and/or infringing license key cards displaying Adobe's marks, defendants' use of Adobe's marks could not be classified as nominative fair use.); *see also Dig. Theater Sys. v. Mintek Dig., Inc.*, 2004 U.S. Dist. LEXIS 16832, at *16 (C.D. Cal. May 25, 2004) (finding that defendant's use of DTS's highly stylized logo in the same manner as DTS's legitimate licensees on DVD players that were not manufactured pursuant to the terms of any DTS license, nor were they submitted for quality control testing, cannot, and did not, constitute nominative fair use).

**3.** ***Defendants Use More of the HDMI Trademarks Than Necessary to Identify their Products***

While it is clear, based on the foregoing analysis of the first *New Kids* factor, that Defendants should not use any of the HDMI Trademarks at all on or in connection with the sale or offering for sale of their Infringing Products, even assuming that Defendants have satisfied the first *New Kids* factor (which again, as

discussed *supra*, they cannot), Defendants use more of Plaintiff's HDMI Trademarks than necessary.

First, Defendants argue that "Defendants use the acronym HDMI – but not stylized design…,"[5] (Motion to Dismiss, pg. 9: 24-25) to support that, "Defendants use no more of Plaintiff's trademark rights than necessary…," (Motion to Dismiss, pg. 9:16); however, a review of the evidence referenced in the Complaint (*see* Complaint, Exs. D, E) reveals that, in fact, Defendants use both HDMI Trademarks identified in the Complaint to advertise, market, promote, distribute, display, offer for sale and/or sell their Infringing Products, namely, at a minimum, the "Viltrox DC-70II 1024 * 600 7" Clip-on Color TFT LCD HD Monitor **<u>HDMI</u>** AV Input for DSLR Camera Camcorder" (emphasis added).  In addition, the photo below evidences the cable that was included with this Infringing Product (Complaint, Ex. D), which bore ***both*** HDMI Trademarks, and even more egregiously, bore the ® symbol:



---

[5] Defendants also ignore that the HDMI Trademarks are comprised of "HDMI" (a registered trademark, not merely an "acronym") and the "stylized design" (also a registered trademark).  *See Complaint*, ¶ 21, *Ex A*.

*See New Kids*, 971 F.2d 302, 308 n.7 ("a soft drink competitor would be entitled to compare its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering"); *see also Toyota Motor Sales*, 610 F.3d at 1182 ("use of the stylized Lexus mark and 'Lexus L' logo was more use of the mark than necessary," as defendant "could adequately communicate their message without using the visual trappings of the Lexus brand."); *Toho Co. v. William Morrow & Co.*, 33 F. Supp. 2d 1206, 1209, 1211 (C.D. Cal. 1998) (holding that a publisher who used the trademark "Godzilla" as the title of a book about the movie-monster by the same name used more of the mark than was "reasonably necessary" where "the title [was] written in the distinctive lettering style used by [the trademark holder] and its licensees in their merchandising activities.").

Defendants also falsely argue that their "use of the term HDMI is no more conspicuous than any of the other connectors it identifies" (Motion to Dismiss, pgs. 9:28, 10:1), and that, "[i]n its marketing materials, Defendants include HDMI along with the litany of other connectors its products include." (Motion to Dismiss, pg. 10: 5-7). On the TomTop Website (as defined in the Complaint, ¶ 30), Defendants identify the Infringing Products specifically used as examples in the Complaint as, the "Viltrox DC-70II 1024 * 600 7" Clip-on Color TFT LCD HD Monitor **HDMI** AV Input for DSLR Camera Camcorder" and, "**HDMI** Portable Mini LED Projector Home Cinema Theater HDMI AV VGA USB SD Golden US Plug", respectively (emphasis added). *See Complaint, ¶ 40, Ex. D.* Defendants' prominent use of one of

the HDMI Trademarks in the titles for both of the foregoing Infringing Products, and notably, as the initial term used to identify one of the foregoing Infringing Products, and the additional use of the HDMI Trademark in the product specification section of both listings, evidences that Defendants' use of the HDMI Trademarks has been deliberately conspicuous and with the intent of suggesting to consumers that the Infringing Products have the interoperability capabilities of the HDMI Specification and are Licensed Products, when they are, in fact, nonconforming counterfeit products (i.e., Infringing Products). *Toho Co.*, 33 F. Supp. 2d at 1211 ("This prong of the test does not appear to be satisfied because [defendant's] use exceeds its legitimate referential purpose."); *see also* 4 McCarthy on Trademarks and Unfair Competition § 23:11 (4th ed.) (In evaluating the second nominative fair use factor, courts are to consider whether the alleged infringer, "step[ped] over the line into a likelihood of confusion by using the senior user's mark too prominently or too often, in terms of size, emphasis, or repetition."); *Brother Records,* 318 F.3d at 908 (considering the fact that the defendant used the mark "'The Beach Boys' more prominently and boldly" than the rest of its name "The Beach Boys Family and Friends" such that event organizers and members of the audience were confused about who was performing); *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796, 805 (9th Cir. 2002) (holding that that defendant's repeated use of the abbreviation "PMOY '81," which stands for "Playmate of the Year 1981," on the background or wallpaper of her website failed the nominative fair use test.); *Summit Entm't, LLC v. B.B. Dakota, Inc.,*

2011 U.S. Dist. LEXIS 151582, at *31 (C.D. Cal. Nov. 21, 2011) ("the selection, placement and use of [plaintiff's] marks was done precisely to achieve a purpose not permitted by the nominative fair use doctrine.").

**4.** ***Defendants' Use of the HDMI Trademarks Suggests Sponsorship and/or Endorsement by HDMI Licensing and the HDMI Specification***

Where, as here, Plaintiff has alleged, in its Complaint, that Defendants' use of the Plaintiff's HDMI Trademarks has created consumer confusion (i.e., that consumers are likely to believe that Defendants' use of the HDMI Trademarks is authorized, sponsored, approved or otherwise related to a Plaintiff and/or its licensees), the court cannot conclude that the affirmative defense of nominative fair use applies as a matter of law.  *Gorski v. Gymboree Corp.*, 2014 U.S. Dist. LEXIS 97816, at *22 (N.D. Cal. July 16, 2014); *see also Estate of Fuller v. Maxfield & Oberton Holdings, LLC*, 906 F. Supp. 2d 997, 1012 (N.D. Cal. 2012) (holding that a plaintiff's allegation that "[d]efendant's use of [plaintiff's] name is 'likely to cause confusion among the general public about [p]laintiff's endorsement of [d]efendant's product.  In particular, consumers are likely to believe that BuckyBalls are authorized, sponsored, approved or otherwise related to [p]laintiff and its licensees, when in fact they are not" was sufficient to overcome a motion to dismiss); *Yeager v. Cingular Wireless LLC*, 627 F. Supp. 2d 1170, 1178 (E.D. Cal. 2008) (denying a motion to dismiss because the court could not "find as a matter of law that defendant's reference to plaintiff in the publication [made] no suggestion of sponsorship or endorsement by plaintiff" where plaintiff alleged that defendant's reference to plaintiff in defendant's

publication constituted "a false or misleading description of fact or misrepresentation of fact that is likely to cause confusion to consumers, and deceives consumers as to the affiliation, connection and/or association of Plaintiff with Defendants"); *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, 12 F. Supp. 2d 1068, 1076 (C.D. Cal. 1998) (denying a motion to dismiss on grounds of nominative fair use where plaintiff alleged that defendants' use of plaintiff's mark "The Crime Channel" in defendants' motion picture about a young boy who watches a cable television station called "The Crime Channel" created "a likelihood of confusion with respect to whether the station refers to plaintiff's product or to a fictional television channel devoted to crime").

As discussed in Section B (1) *supra,* Plaintiff has properly alleged claims of trademark infringement, counterfeiting and unfair competition because the HDMI Trademarks are only used on Licensed Products to signify strict compliance with the HDMI Specification and certification testing for interoperability, it is simply not possible to use the HDMI Trademarks on or in connection with a product without implying the endorsement or sponsorship of the interoperability inherent with the HDMI Trademarks.   As indicated in Section B (3) *supra*, Defendants, on their TomTop Website, identify the two Infringing Products used as specific examples in the Complaint as, the "Viltrox DC-70II 1024 * 600 7″ Clip-on Color TFT LCD HD Monitor **HDMI** AV Input for DSLR Camera Camcorder" and, "**HDMI** Portable Mini LED Projector Home Cinema Theater HDMI AV VGA USB SD Golden US Plug"

(emphasis added), respectively, and further, as depicted above, the cable that was included with the "Viltrox DC-70II 1024 * 600 7" Clip-on Color TFT LCD HD Monitor **HDMI** AV Input for DSLR Camera Camcorder" (Complaint, Ex. D) bore ***both*** HDMI Trademarks, and even more egregiously, bore the ® symbol . *See Complaint*, ¶ 40, *Ex. D*. There is no question that consumers seeing the HDMI Trademark, as the prominent first term used to identify, at a minimum, one of the foregoing Infringing Products and upon receiving an Infringing Product, along with a cable that bore both HDMI Trademarks, would think that the Infringing Products were endorsed by Plaintiff, and would view the HDMI Trademarks as clear source identifiers. *See Adobe Sys.*, 153 F. Supp. 3d at 1143 (finding that defendants' use of Adobe's marks could not be classified as nominative fair use because such use "was not intended to describe Adobe's product, but rather to make it appear that the software was sanctioned by Adobe for sale and distribution," where plaintiffs alleged that defendants' fabricated fake "serial license key cards" that were "not authorized."); *KEMA, Inc*, 2010 U.S. Dist. LEXIS 90803, at *10 (finding plaintiffs "factual allegations sufficient to plead defendants' use of the Visualize-IT mark falsely suggests sponsorship or endorsement by plaintiffs" where plaintiffs' alleged that: "Defendants' use of the Visualize-IT name on their website and other promotional materials to promote their new EnergyProbe ™ product constitutes the use in commerce of a colorable imitation, copy and reproduction of RLW's Visualize-IT trademark", that the "EnergyProbe ™ is being distributed and licensed to the same

types of customers as plaintiffs' Visualize-IT products and services", and that "Defendants' use of plaintiff's mark is likely to cause confusion, mistake or deception in the minds of the public").

"The third requirement of the nominative fair use defense -- the lack of anything that suggests sponsor-ship or endorsement -- is merely the other side of the likelihood-of-confusion coin." *Brother Records*, 318 F.3d at 909, n. 5, citing 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 11:47 (4th ed. 2001)("noting 'some confusion in the case law as to whether 'fair use' is really a distinct and separate 'defense' and arguing that 'fair use' should be viewed as merely one type of use which is not likely to cause confusion'"). "[W]hereas [the] plaintiff carries the burden of persuasion in a trademark infringement claim to show likelihood of confusion. . .the nominative fair use defense shifts to the defendant the burden of proving no likelihood of confusion." *Brother Records*, 318 F.3d at 909, n. 5. In their attempt to satisfy the third *New Kids* factor, Defendants merely, without any support whatsoever, state that because they do not: (1) assert that their Infringing Products have been certified or approved by Plaintiff; (2) assert that their Infringing Products have met Plaintiff's specifications; (3) assert that they have submitted any of their Infringing Products to any of Plaintiff's testing centers; (4) refer to any individual members of Plaintiff or any actions taken by any of them or Plaintiff, that this is sufficient to conclude that Defendants have done nothing to make any reference to any particular individual members of Plaintiff. Motion to Dismiss, pg. 10: 10-18.

Defendants admit that they have knowingly used the HDMI Trademarks on unlicensed, noncompliant Infringing Products that have not been submitted to testing and are therefore, not certified to work seamlessly with other Licensed Products. *See* Motion to Dismiss, pg. 10: 10-18. Defendants' Infringing Products are of the same type of products as the over 3 billion Licensed Products that are manufactured and sold by HDMI Adopters properly using the HDMI Trademarks (and in some cases, are sold alongside Licensed Products on the TomTop Website). *Complaint*, ¶¶ 18-20, 29-30, 35-37, 40-41. Instead of supporting Defendants' satisfaction of the third *New Kids* factor, this operates to prove that Defendants' actions are likely to cause confusion as to sponsorship and endorsement by Plaintiff of Defendants' Infringing Products. *See Dig. Theater Sys.*, 2004 U.S. Dist. LEXIS 16832, at *17-18 (finding that where "[defendant] used marks identical to the registered trademarks on its [infringing] DVD players and on advertisements for its [infringing] DVD players…,"and "[b]oth [plaintiff's] licensees and [defendant] used the trademarks to indicate that DVD players were capable of playing multi-channel digital sound…[defendant's] use of the marks in this way is… likely to deceive the intended audience, consumer purchasers of DVD players, as to [plaintiff's] affiliation with the DVD players. [Defendant's] advertising of its DVD players displaying the DTS trademarks resulted in injury to DTS by confusing consumers with respect to its affiliation or endorsement of the [infringing] DVD players."); *see also Summit Entm't, LLC*, 2011 U.S. Dist. LEXIS 151582, at *31-32 (finding that defendants' extensive use of plaintiff's intellectual

property on and in connection with the sale of the infringing product, which at the very least implied sponsorship, coupled with defendants' sale of the infringing product through retailers that also offered plaintiff's licensed product suggested that ordinary consumers would be or are likely to be confused by plaintiff's license or sponsorship of the infringing product.).

Moreover, Defendants' acknowledgement of non-compliance with the HDMI Specification serves not only to confirm the overwhelming reason for this lawsuit in the first place (i.e., to curtail Defendants' knowing, counterfeiting and infringing conduct and to protect consumers, HDMI Licensing and HDMI Adopters from the damaging effects that non-compliance with the HDMI Specification brings), but also to acknowledge their liability for the same.

### III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendants' Motion to Dismiss should be denied.

Dated: December 2, 2016                    Respectfully submitted,

                                      **BESHADA FARNESE LLP**

                                      BY*: /s/ Peter J. Farnese*_____
                                      Peter J. Farnese
                                      pjf@beshadafareselaw.com
                                      10250 Constellation Blvd., Suite 2300
                                      Los Angeles, California 90067
                                      Telephone: 310-356-4668
                                      Facsimile: 310-388-1232

                                      *Attorneys for Plaintiff*
                                      *HDMI Licensing, LLC*

1

**EPSTEIN DRANGEL LLP**
Jason M. Drangel (JD 7204)

2
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)

3
asands@ipcounselors.com
Kerry B. Brownlee (KB 0823)

4
kbrownlee@ipcounselors.com
60 East 42nd Street, Suite 2520

5
New York, NY 10165
Telephone: 212-292-5390

6
Facsimile: 212-292-5391

7
*Attorneys for Plaintiff*
*HDMI Licensing, LLC*

8
*Pro Hac Vice*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2016, I caused the foregoing document to be electronically filed with the Clerk of the Court using the Court's CM/ECF System, which will send electronic notification of such filing to the following:

**MARK FANG ATTORNEY AT LAW APC**
Mark M. Fang, Esq.
400 Camarillo Ranch Road, Suite 203
Camarillo, CA 93012
Tel.: 805-383-2788
Fax: 805-388-9488
Email: mfang@markfangapc.com

**HINSHAW AND CULBERTON LLP**
Filomena E Meyer, Esq.
11601 Wilshire Boulevard Suite 800
Los Angeles, CA 90025
Tel.: 310-909-8000
Fax: 310-909-8001
Email: fmeyer@hinshawlaw.com

Mark K. Suri, Esq.
222 North LaSalle Street Suite 300
Chicago, IL 60601
Tel.: 312-704-3000
Fax: 312-704-3001
Email: msuri@hinshawlaw.com

Dated:  December 2, 2016      **BESHADA FARNESE LLP**

BY:  */s/ Peter J. Farnese*
Peter J. Farnese (SBN 251204)
pjf@beshadafarneselaw.com
10250 Constellation Blvd., Suite 2300
Los Angeles, California 90067
Telephone: 310-356-4668
Facsimile: 310-388-1232
*Attorneys for Plaintiff*
*HDMI Licensing, LLC*